PAUL W. SPENCER AND VERNA M. SPENCER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spencer v. Commissioner
Docket No. 1727-85.
United States Tax Court
T.C. Memo 1985-623; 1985 Tax Ct. Memo LEXIS 4; 51 T.C.M. (CCH) 155; T.C.M. (RIA) 85623; December 26, 1985. Paul W. Spencer and Verna M. Spencer, pro se. Susan Lewis, for the respondent. WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to section 7456, [1] Internal Revenue Code of 1954, as amended. Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiencies
1978
$6,648
1980
179
1982
2,008
After concessions by respondent, the issues remaining for decision are: (1) Amounts Received Pursuant to Employment Agreements-- Whether $42,500 received by petitioners in 1978 pursuant to employment agreements negotiated in connection *6 with the sale of petitioners' business is characterized as ordinary income or gain from the sale of capital assets. (2) Business-Related Revenue and Expenditures-- (a) Whether petitioners properly deducted claimed business expenses in excess of amounts allowed by respondent with respect to the years 1978, 1980 and 1982; and (b) Whether petitioners failed to report business income of $2,496.13 received in 1982; (3) Capital Loss Deduction-- Whether petitioners' capital loss deduction for 1982 is limited to $3,000; (4) Dependency Exemption Deduction-- Whether petitioners are entitled to a dependency exemption deduction for petitioner Paul W. Spencer's mother for 1978. FINDINGS OF FACT--GENERAL Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference. At the time of filing their petition, petitioners resided in Morris Plains, New Jersey. ISSUE 1 - AMOUNTS RECEIVED PURSUANT TO EMPLOYMENT AGREEMENTS
FINDINGS OF FACT AND OPINION Petitioners controlled Northeast Burn-Zol Corporation (Burn-Zol) which was a company engaged in the business of designing, manufacturing and marketing incineration *7 equipment. On February 11, 1977, all the assets of this corporation were sold. Petitioners reported proceeds from the sale of $73,023 as long-term capital gain, noted as liquidating dividends, on their 1978 income tax return. [2] The purchaser, New Way Industries, Inc. (New Way), retained petitioners in management positions at Burn-Zol under contemporaneously executed employment agreements. These agreements provided for payments to petitioners in the event their employment terminated before 1982. Their employment ended in February of 1978. Petitioners reported $42,500 received under the termination provisions of the employment contracts as ordinary income on their 1978 income tax return. In 1981 petitioners filed an amended return for 1978 in which they asserted that $42,500 reported as earned income on Schedule C, should have been included in the gross sales price of the Burn-Zol business and treated as additional liquidating dividends and therefore long-term capital gain. *8 Petitioners contend that the employment agreements were an integral part of the consideration received for the Burn-Zol business and that the payments to them under these agreements are capital in nature since they flow from a capital transaction. We do not agree. While the employment agreements with New Way may have been an inducement for petitioners to cause Burn-Zol to sell its assets, the agreements were not part of the consideration for the sale. The employment agreements were contracts for personal services and performance of services was a prerequisite to payment. The lump sum upon termination was paid for release from the employment contract and constitutes ordinary income. F. W. Jessop v. Commissioner,16 T.C. 491, 498 (1951). ISSUE 2 - BUSINESS-RELATED REVENUE AND EXPENDITURES
FINDINGS OF FACT AND OPINION A. Travel and Entertainment, Automobile, and Advertising, Expenses
After concessions, the following claimed business expenses are contested by respondent for lack of substantiation. 1978
1980
1982
Travel and Entertainment
$7,765
[3] $4,989
[4] $2,841
Car and Truck
[4] 1,064
Advertising
127
8,047
*9 Section 274(d) requires a taxpayer to substantiate travel and entertainment expenses incurred while carrying on a trade or business by producing adequate records or sufficient corroborating evidence. Petitioners have offered unsupported statements regarding their travel and entertainment expenses. Petitioner Paul W. Spencer has testified that he has supporting documentation, but he has not produced it despite many opportunities to do so. Under these circumstances we sustain respondent's disallowance of the travel and entertainment expenditures. The determinations made by respondent in his notice of deficiency are presumed correct. The burden of proof is on petitioners to show those determinations are wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners have not presented sufficient evidence to support their deductions for advertising and automobile expenses. Petitioner Paul W. Spencer's testimony concerning these deductions *10 is unconvincing. Petitioners have not met their burden of proof with respect to these items and respondent's determinations are sustained. B. Legal Expenditures
Petitioners deducted $7,991 as legal expenses incurred in their business on their 1978 income tax return and $479 on their 1982 income tax return. Respondent disallowed $6,491 of the 1978 expenses and all of the 1982 expenses for lack of substantiation. Petitioners have presented some evidence regarding 1978 legal expenditures. One of the cancelled checks introduced by petitioner was a corporate expense of Burn-Zol in the amount of $170 and another was a nondeductible personal expenditure of $645. Our review of the cancelled checks discloses that petitioners incurred deductible ordinary and necessary legal expenses during 1978 in the amount of $1,584. Petitioners paid legal fees of $1,025 relating to the liquidation of Burn-Zol in 1978, and their gain from liquidating dividends should be decreased to reflect this amount. Petitioners incurred organizational expenditures relating to the formation of Wheat Corporation during 1978 in the amount of $835.60. Such expenditures must be considered a part of petitioners' *11 basis for their investment in Wheat Corporation since they have introduced no evidence in support of a deduction under section 248 or otherwise. Respondent's determinations with respect to expenditures for legal fees are sustained except to the extent otherwise indicated above. C. Depreciation Expense
After concessions by respondent, depreciation expense of $347 per year still is in issue. Respondent disputes the cost basis used by petitioners in computing depreciation deductions. Petitioners used a $74,000 cost basis, but have offered documentary evidence substantiating half that amount and only their unsupported, vague and unconvincing testimony in support of the remainder. Petitioners have not met their burden of proof on this issue and respondent's determination is sustained. D. Commission Expenses and Income
During 1982, petitioners earned a commission of $4,992.25 which they divided equally with a business associate. Petitioners' position is that the entire commission was reported in their 1982 gross income and that the associate's half ($2,496.13) then was deducted as a commission expense. Respondent disallowed the $2,496.13 expense and added *12 $2,496.13 to petitioners' income on the ground that petitioners had failed to substantiate their position. We agree with respondent that petitioners have failed to demonstrate that $2,496, which they characterize as their half of the profit from this transaction, was included in gross income reported on Schedule C of their 1982 tax return. We conclude that petitioner Paul W. Spencer's testimony and the documentary evidence he presented is sufficient to satisfy petitioners' burden of proof with respect to the payment of $2,496.13 to petitioners' business associate. ISSUE 3 - CAPITAL LOSS DEDUCTION
FINDINGS OF FACT AND OPINION Petitioners claimed a capital loss deduction of $5,252.50 on their 1982 income tax return. Respondent disallowed $2,253 on the ground that section 1211 limited this deduction to $3,000. Section 1211(b) imposed limits upon the amount of capital loss deduction allowable for 1978. In the case of petitioners the applicable limit under section 1211(b)(1)(B) and 1211(b)(2)(B) was $3,000. Petitioners deducted $5,252.50 which was an amount in excess of that allowed by law. Respondent correctly disallowed the excess deduction. ISSUE 4 - DEPENDENCY *13 EXEMPTION DEDUCTION
FINDINGS OF FACT AND OPINION In 1945, Paul W. Spencer was appointed as guardian to his mother, Edith W. Spencer. He served in that capacity until her death in 1982. Petitioners claimed a dependency exemption deduction for Paul Spencer's mother on their 1978 income tax return. Petitioners have stipulated that during 1978 they paid $1,251 towards her support. At trial petitioners provided an annual probate court accounting sheet on which they had classified the $1,251 as a loan to the estate of Edith W. Spencer. Edith W. Spencer owned and occupied her own home and received monthly social security payments during 1978. Section 152(a)(4) allows a dependency exemption for a taxpayer's mother or father where the taxpayer has provided over one-half of the parent's support. The only evidence of support offered by petitioners at trial are cancelled checks for $1,251. Petitioner Paul Spencer has classified payments to or for the estate as loans in his accounting to the probate court in his capacity as his mother's guardian. Although Paul Spencer testified that these advances to his mother had not been repaid, his 1982 receipts include amounts described as *14 loans from his mother's estate. Both petitioners testified they did not borrow money from the estate, so the record in this case leads to the conclusion that these amounts were loan repayments. The record here indicates that Paul Spencer's mother provided her own support with loans from petitioners and social security payments. Petitioners are not entitled to a dependency exemption for her for 1978. To reflect our decision herein, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Respondent has not contested the treatment of this amount as long-term capital gain, although the record is not clear whether the transaction satisfied the requirements of section 337 or whether petitioners otherwise convinced respondent that the amount reported on their return as liquidating dividends properly was reported as capital gain to them.↩
3. This amount includes unallocated car, truck and sales expenses. ↩
4. hese amouts represent 60% of the petitioners' initial claims. Respondent orally agreed to allow 40% of such claimed deductions at trial.↩